UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WINSTON KENDALL,<br><br>    Plaintiff,<br><br>v.<br><br>CITY OF BOSTON, JOHN DOE, *in his individual and official capacities*, and RICHARD ROE, *in his individual and official capacities*,<br><br>    Defendants. | * <br> * <br> * <br> * <br> * <br> * <br> * Civil Action No. 21-cv-10711-ADB <br> * <br> * <br> * <br> * <br> * <br> * |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

Plaintiff Winston Kendall ("Plaintiff") brings this case pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1981, Mass. Gen. Laws ch. 12, § 11I, and Massachusetts state common law, alleging that the City of Boston ("City") and two unidentified City police officers, John Doe and Richard Roe ("Officer Defendants," and together with the City, "Defendants"), violated his civil rights by engaging in unlawful conduct when he was stopped and detained while walking down the street. [ECF No. 16 ("Am. Compl.")]. Currently pending before the Court is the City's motion to dismiss the amended complaint. [ECF No. 24]. For the reasons set forth below, the motion is GRANTED in part and DENIED in part.

## I.   BACKGROUND

### A.   Factual Background

The following facts are drawn from the amended complaint, the allegations of which are taken as true for purposes of evaluating the motions to dismiss. See Ruivo v. Wells Fargo Bank, 766 F.3d 87, 90 (1st Cir. 2014).

Plaintiff was born in Trinidad and Tobago and identifies as a Black man. [Am. Compl. ¶ 1]. At all relevant times, he has lived in Dorchester, Suffolk County, Massachusetts. [Id.]. On or around February 13, 2018, Plaintiff was walking near the intersection of Columbus Avenue and Malcolm X Boulevard around the late morning or early afternoon when he was confronted by the Officer Defendants. [Id. ¶ 8]. Defendant Doe stepped into Plaintiff's path and physically impeded his ability to pass. [Id.]. Plaintiff said that he wanted to keep walking and Defendant Doe told him that he was not free to go. [Id.]. Defendant Roe stood behind Plaintiff, which prevented him from turning around and walking away. [Id.]. Plaintiff, based on his experience and anecdotal evidence from others, believed that the Officer Defendants sought to provoke him into a physical confrontation to create a pretext for assaulting and arresting him. [Id. ¶ 9]. Plaintiff was released after having to provide identification and explain his reason for being in that area. [Id. ¶ 14].

Plaintiff claims that the stop was racially motivated, and was made pursuant to a policy, practice, or custom of the City and that the City also has a policy, practice, or custom of failing to "monitor, supervise, superintend and train law enforcement officers" and "failing to properly investigate citizen complaints of racial harassment and unlawful stops and detentions . . . ." [Am. Compl. ¶¶ 5–7, 15].

Plaintiff's amended complaint also summarizes the findings of a report and two newspaper articles. First, an October 2014 American Civil Liberties Union ("ACLU") report that documented encounters between City police officers and citizens from 2007 to 2010 found that Black males were stopped 63.3% of the time even though they make up less than 25% of the City's population. [Am. Compl. ¶ 17]. Second, a November 1996 New York Times article that detailed the findings of a study that illustrated a link between racial harassment and medical

2

problems including hypertension, stroke, suicide, and death.  [Id. ¶ 18].  And finally, a November 2017 New York Times article that stated that "[m]ore than 700 studies on the link between discrimination and health have been published since 2000.  This body of work establishes a connection between discrimination and physical and mental well-being."  [Id.].[1]

Plaintiff seeks compensatory and punitive damages, costs, attorneys' fees, declaratory relief, and a "cease and desist order . . . ."  [Am. Compl. ¶ 45].

B.     **Procedural History**

On June 8, 2021, Plaintiff filed his amended complaint, which asserts ten state and federal claims: (1) violation of his Fourth and Fourteenth Amendment rights under 42 U.S.C. § 1983 and violation of Article 14 of the Massachusetts Declaration of Rights against Defendants (Count 1), [Am. Compl. ¶¶ 25–26]; (2) violation of his right to equal protection under 42 U.S.C. § 1983 against Defendants (Count 2), [id. ¶¶ 27–28]; (3) failure to train, supervise, audit, and discipline in violation of 42 U.S.C. § 1983 against the City (Count 3), [id. ¶¶ 29–30]; (4) violation of 42 U.S.C. § 1981 against Defendants (Count 4), [id. ¶¶ 31–32]; (5) violation of Massachusetts General Laws ch. 12 § 11I against Defendants (Count 5), [id. ¶¶ 33–34]; (6) false arrest against Defendants (Count 6), [id. ¶¶ 35–36]; (7) false imprisonment against Defendants (Count 7), [id. ¶¶ 37–38]; (8) assault against Defendants (Count 8), [id. ¶¶ 39–40]; (9) intentional

---

[1] Plaintiff's request that the Court take judicial notice of the 2014 ACLU report and the 2017 New York Times article, [ECF No. 28], is opposed by the City, [ECF No. 31].  Although the Court agrees that it is unlikely that the Court can take judicial notice of these documents for the truth of the matter asserted, it is unnecessary to analyze the issue because, at the motion to dismiss stage, the Court can "consider, in addition to the complaint itself, a limited array of additional documents such as any that are attached to the complaint and documents sufficiently referred to in the complaint."  Giragosian v. Bettencourt, 614 F.3d 25, 27–28 (1st Cir. 2010) (internal quotation marks and citations omitted).  Further, as described below, the Court does not rely on these materials in reaching its decision on the City's motion to dismiss.  Accordingly, the request for judicial notice is DENIED as moot.

infliction of emotional distress against Defendants (Count 9)[2], [id. ¶¶ 41–42]; and (10) negligence against the City (Count 10), [id. ¶¶ 43–45].

On June 22, 2021, the City filed a motion to dismiss the amended complaint. [ECF No. 24]. The City asks the Court to dismiss all of the claims against it and to dismiss Counts 2, 3, 4, 5, 6, 8, and 9 against the Officer Defendants.[3] [Id.; ECF No. 25 at 1]. Plaintiff opposed the motion on July 5, 2021, [ECF Nos. 26, 27], and also moved to strike three footnotes from the City's memorandum in support of its motion, [ECF No. 29]. The City opposed the motion to strike on July 13, 2021. [ECF No. 30].

## II.    LEGAL STANDARD

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts, analyze those facts in the light most favorable to the plaintiff, and draw all reasonable factual inferences in favor of the plaintiff. See Gilbert v. City of Chicopee, 915 F.3d 74, 76, 80 (1st Cir. 2019). "[D]etailed factual allegations" are not required, but the complaint must set forth "more than labels and conclusions." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The alleged facts must be sufficient to "state a claim to relief that is plausible on its face." Id. at 570.

"To cross the plausibility threshold a claim does not need to be probable, but it must give rise to more than a mere possibility of liability." Grajales v. P.R. Ports Auth., 682 F.3d 40, 44–45 (1st Cir. 2012) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A determination of plausibility is 'a context-specific task that requires the reviewing court to draw on its judicial

---

[2] Plaintiff also labeled the intentional infliction of emotional distress claim as Count 8. To avoid confusion the Court will refer to it as Count 9 and the negligence claim as Count 10.

[3] Although the City seeks dismissal of Count 3 against all defendants, the Court notes that Plaintiff only asserted Count 3 against the City and not against the Officer Defendants.

experience and common sense.'" Id. at 44 (quoting Iqbal, 556 U.S. at 679). "[T]he complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." Hernandez-Cuevas v. Taylor, 723 F.3d 91, 103 (1st Cir. 2013) (quoting Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 14 (1st Cir. 2011)). "The plausibility standard invites a two-step pavane." A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013) (citing Grajales, 682 F.3d at 45). First, "the [C]ourt must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Id. (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)). Second, "the [C]ourt must determine whether the remaining factual content allows a 'reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Morales-Cruz, 676 F.3d at 224).

### III.  DISCUSSION

#### A.  Claims Against Doe and Roe in their Individual and Official Capacities

The Officer Defendants, who are currently unidentified and have not been served, do not move to dismiss the claims against them. Instead, the City has moved to dismiss Counts 2–6, 8, and 9 on behalf of the Officer Defendants in their individual capacities.[4] [ECF No. 25 at 1]. The City does not identify the basis for its ability to seek dismissal of the claims against the Officer Defendants, and its attorneys have not entered an appearance on behalf of the Officer Defendants.

---

[4] In its motion and in its memorandum, the City at times also asks the Court to dismiss Count 7 against the Officer Defendants, [ECF No. 24 at 2; ECF No. 25 at 4], but this appears to be a typographical error given the City's memorandum, which repeats its request that the Court dismiss Counts 2–6, 8, and 9 against the Officer Defendants multiple times, [ECF No. 25 at 1, 3, 19], and does not meaningfully develop the analysis regarding Count 7, [ECF No. 25 at 12–13].

Although the Court does have the power to sua sponte dismiss claims, "[s]ua sponte dismissals are strong medicine, and should be dispensed sparingly." Chute v. Walker, 281 F.3d 314, 319 (1st Cir. 2002) (quoting Gonzalez-Gonzalez v. United States, 257 F.3d 31, 33 (1st Cir. 2001)). Once the Officer Defendants are identified and served, they will then have an opportunity to move to dismiss the claims against them in their individual capacities, but at this point it is premature to do so especially because, as described below, certain claims against the City will be allowed to proceed and a sua sponte dismissal would not serve the interest of judicial economy. Further, the City has not moved to dismiss Counts 1 and 7 against the Officer Defendants, so those claims would also proceed regardless of the Court's ruling on the City's motion.

Although sua sponte dismissal under Rule 12(b)(6) is not appropriate, the deadline to serve the Officer Defendants has long since expired. See Fed. R. Civ. P. 4(m). Even though Plaintiff has not demonstrated any attempt to ascertain the identity of these police officers, the Court appreciates that there may be difficulty uncovering their identities without discovery and finds that the City will not be prejudiced if Plaintiff is afforded additional time to attempt to identify the Officer Defendants through discovery. "[W]hen, as here, a party is ignorant of defendants' true identity, it is unnecessary to name them until their identity can be learned through discovery or through the aid of the trial court." Kemper Ins. Companies, Inc. v. Fed. Exp. Corp., 115 F. Supp. 2d 116, 125 (D. Mass. 2000), aff'd sub nom. Kemper Ins. Companies v. Fed. Exp. Corp., 252 F.3d 509 (1st Cir. 2001) (quoting Maclin v. Paulson, 627 F.2d 83, 87 (7th Cir. 1980)). Accordingly, Plaintiff shall make diligent efforts to identify defendants Doe and Roe and, once their identities are ascertained, he must promptly amend the complaint and effect service, otherwise his claims against the Officer Defendants may be dismissed without

prejudice.  Martinez-Rivera v. Sanchez Ramos, 498 F.3d 3, 8 n.5 (1st Cir. 2007) ("[O]nce those identities are revealed, the plaintiff should act promptly to amend the complaint to substitute the correct parties and to dismiss any baseless claims."); Kemper Ins. Companies, Inc, 115 F. Supp. 2d at 125 ("Fictitious parties must eventually be dismissed, if discovery yields no identities." (quoting Scheetz v. Morning Call, Inc., 130 F.R.D. 34, 37 (E.D.Pa. 1990))).

As to claims against the Officer Defendants in their official capacities, because they must be treated as claims against the City itself, the Court will address those claims in the context of the City's motion to dismiss.  See Surprenant v. Rivas, 424 F.3d 5, 19 (1st Cir. 2005) ("A suit against a public official in his official capacity is a suit against the governmental entity itself.") (citing Wood v. Hancock County Sheriff's Dep't, 354 F.3d 57, 58 n.1 (1st Cir. 2003)).

**B.  Counts 1 & 3: 42 U.S.C. § 1983 - Violation of the Fourth and Fourteenth Amendments and Failure to Train, Supervise, Audit or Discipline[5]**

The City argues that Plaintiff's § 1983 claims must be dismissed because he has failed to state a claim for Monell liability.  [ECF No. 25 at 4–5, 7].

42 U.S.C. § 1983 provides a cause of action for anyone who has a constitutional right violated by a person acting "under color of any statute, ordinance, regulation, custom, or usage, of any State."  Plaintiff alleges that his Fourth Amendment rights were violated during his February 2018 encounter with the Officer Defendants.  [Am. Compl. ¶ 26].  The City does not dispute that the Officer Defendants would have been acting under color of state law, but argues that Plaintiff has failed to plead a claim for unlawful arrest because he was not actually placed under arrest.  [ECF No. 25 at 4–5].  The City's argument appears to ignore that Plaintiff's § 1983

---

[5] Count 1 also appears to bring a claim under Article 14 of the Massachusetts Declaration of Rights.  [Am. Compl. ¶ 26].  The City did not address this theory in its motion to dismiss, so the Court declines to analyze it at this time.

7

allegations are not limed to an unlawful arrest, but also encompass his stop, detention, and questioning, which were allegedly carried out without reasonable suspicion. See [Am. Compl. ¶¶ 12–13].

> [D]etention at the hands of a police officer constitutes a seizure of the detainee's person and, thus, must be adequately justified under the Fourth Amendment. United States v. Romain, 393 F.3d 63, 70–71 (1st Cir. 2004). The case law recognizes two classes of seizures falling along this continuum: arrests (whether actual or de facto) and temporary detentions (such as investigatory stops). The justification needed for these two types of seizures is qualitatively different: an arrest must be grounded on a showing of probable cause, see, e.g., Carroll v. United States, 267 U.S. 132, 156, (1925), whereas a temporary detention may be grounded on a lesser showing equivalent to reasonable suspicion, see, e.g., United States v. Zapata, 18 F.3d 971, 975 (1st Cir. 1994).

Morelli v. Webster, 552 F.3d 12, 19 (1st Cir. 2009). Here, taking all of the facts alleged as true, the Officers Defendants stopped, detained, and questioned Plaintiff without reasonable suspicion and solely due to the fact that he is Black. [Am. Compl. ¶¶ 8, 12–14]. At one point, Plaintiff was also told by Doe that he was not free to leave during the encounter and was only released after Plaintiff provided identification. [Id.]. Thus, at this early stage, Plaintiff has alleged a Fourth Amendment violation based on the Officer Defendants' conduct.

The analysis, however, does not end there for the Monell claims. Under § 1983,

> a local government may not be sued . . . for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

Monell v. Dep't. of Soc. Servs. of N.Y., 436 U.S. 658, 694 (1978). Thus, the City can be liable under § 1983 "only if the [constitutional] violation occurs pursuant to an official policy or custom." Welch v. Ciampa, 542 F.3d 927, 941 (1st Cir. 2008). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." Connick v.

Thompson, 563 U.S. 51, 61 (2011).  A custom or policy can also be premised on an allegation that the municipality failed to train or supervise officers.  See Gray v. Cummings, 917 F.3d 1, 14 (1st Cir. 2019).  "Triggering municipal liability on a claim of failure to train requires a showing that municipal decisionmakers either knew or should have known that training was inadequate but nonetheless exhibited deliberate indifference to the unconstitutional effects of those inadequacies."  Id. (quoting Haley v. City of Boston, 657 F.3d 39, 52 (1st Cir. 2011)).

Plaintiff's Monell claims appear to allege two bases for liability: (1) the City maintained an unconstitutional policy, practice, or custom of allowing police officers to stop individuals based on their race and without reasonable suspicion; and (2) the City failed to properly train, supervise, investigate, and discipline police officers regarding these suspicionless stops.  [Am. Compl. ¶¶ 6, 12, 16, 21].  The City moves to dismiss the Monell claims because, in its view, Plaintiff makes only conclusory allegations that simply recite the elements of the cause of action.  [ECF No. 25 at 5].

While certainly bare bones, the amended complaint in this case alleges that the City "maintained a custom, policy[, and] practice, whereby a significant number of officers . . . would harass, stop, detain, interrogate without reasonable suspicion, black persons, especially, black males," [Am. Compl. ¶¶ 5–6], and further, that the actions and conduct of the officers, acting pursuant to this policy or custom, was known to supervisory officials, [id.], who failed to train, supervise, and investigate the officers, [id. ¶ 16].  Lastly, the amended complaint alleges that the Officer Defendants were acting pursuant to the City's policies, customs, and practices when they detained Plaintiff, which directly caused Plaintiff's injuries here.  [Id. ¶¶ 12, 20].

The allegations above are sufficient to survive the motion to dismiss.  At this early stage, the First Circuit has held that similarly broad allegations were found to be sufficient in Haley,

9

657 F.3d at 51–53. In that case, the plaintiff claimed that the City police had a standing policy "under which Boston police officers regularly kept helpful evidence from criminal defendants," and also failed to properly train its officers, which the City vigorously disputed. Id. at 52. The First Circuit allowed the Monell claim to proceed to discovery because the motion to dismiss stage "is neither the time nor the place to resolve the factual disputes between the parties," and whether the plaintiff could "prove what he has alleged is not the issue." Id.

Accordingly, the City's motion to dismiss Counts 1 and 3 is DENIED.

### C. Count 2: Equal Protection Claim

In Count 2, Plaintiff brings a claim under § 1983 for violation of his right to "equal protection." [ECF No. 16 ¶ 28]. The Court assumes that Plaintiff is alleging that the City violated the Equal Protection Clause of the Fourteenth Amendment.

As the First Circuit explained,

> [t]he Fourteenth Amendment's Equal Protection Clause prohibits a state from treating similarly situated persons differently because of their classification in a particular group. See U.S. Const. amend. XIV, § 1; Tapalian v. Tusino, 377 F.3d 1, 5 (1st Cir. 2004). Generally, for an equal protection claim to survive a motion to dismiss, a plaintiff must allege facts plausibly demonstrating that "'compared with others similarly situated, [the plaintiff was] selectively treated . . . based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" Barrington Cove Ltd. P'ship v. R.I. Hous. & Mortg. Fin. Corp., 246 F.3d 1, 7 (1st Cir. 2001) (second alteration in original) (emphases omitted) (quoting Rubinovitz v. Rogato, 60 F.3d 906, 910 (1st Cir. 1995))

Mulero-Carrillo v. Roman-Hernandez, 790 F.3d 99, 105–06 (1st Cir. 2015). The City contends that the amended complaint fails to state a claim because it does not contain any allegations that others who were similarly situated to Plaintiff were treated differently. [ECF No. 25 at 6–7]. In his opposition brief, Plaintiff does not appear to respond to the City's argument or otherwise defend Count 2. See [ECF No. 27]. Even assuming that Plaintiff has not abandoned this claim, the Court agrees that taking all the facts as true, he has failed to state an equal protection claim.

10

For purposes of an equal protection claim, "[a] similarly situated person is one that is 'roughly equivalent' to the plaintiff 'in all relevant respects.'" Estate of Bennett v. Wainwright, 548 F.3d 155, 166 (1st Cir. 2008) (quoting Barrington Cove Ltd. P'ship, 246 F.3d at 8). In his pleading, Plaintiff does not "compare the treatment [he] received at the hands of the defendants with the treatment of any person similarly situated to [him]." Id. at 167. Thus, he has "failed to meet this threshold requirement." Id. Though the amended complaint alleges that he was stopped because he is Black, he has not alleged any specific facts to indicate that others who were similarly situated apart from their race were treated differently. Accordingly, the City's motion to dismiss Count 2 is GRANTED.

### D. Count 4: 42 U.S.C. § 1981

The City argues that the § 1981 claim must be dismissed for a host of reasons, including that Plaintiff has failed to plead the elements of the claim and to explain that any action taken against him was due to his race. [ECF No. 25 at 7–9]. As with his equal protection claim, Plaintiff has not responded to the City's argument or otherwise attempted to argue that his § 1981 claim should survive a motion to dismiss. See [ECF No. 27]. Even assuming that Plaintiff did not abandon this claim, his § 1981 claim against the City fails as a matter of law.

Section 1981 provides, in relevant part, that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . and to the full and equal benefit of all laws and proceedings . . . as is enjoyed by white citizens . . . ." 42 U.S.C. § 1981(a). As the First Circuit recently reiterated,

> [t]he "exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units" is section 1983. Buntin v. City of Boston, 857 F.3d 69, 70–71 (1st Cir. 2017) (quoting Jett v. Dallas ISD, 491 U.S. 701, 733 (1989)). Thus, a plaintiff "may not bring claims for damages under 42 U.S.C. § 1981 against state actors." Id. at 70.

11

Alston v. Town of Brookline, 997 F.3d 23, 42 (1st Cir. 2021); see also Brooks v. Martha's Vineyard Transit Auth., 433 F. Supp. 3d 65, 75 (D. Mass. 2020) (granting a municipal transit authority's "motion for summary judgment because under binding precedent 42 U.S.C. § 1981 does not provide a cause of action against state actors").  The City is a state actor and thus a claim under § 1981 cannot be brought against it.  Accordingly, the City's motion to dismiss Count 4 is GRANTED.

### E.     Count 5: Violation of Mass. Gen. Laws Ch. 12 § 11

The Massachusetts Civil Rights Act ("MCRA"), Mass. Gen. Laws Ch. 12 § 11, provides a cause of action against "any person or persons" who

> interfere by threats, intimidation or coercion, or attempt to interfere by threats, intimidation or coercion, with the exercise or enjoyment by any other person or persons of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth.

Mass. Gen. Laws ch. 12, § 11H; Mass. Gen. Laws ch. 12, § 11I (providing civil cause of action).  In essence, an MCRA claim is a § 1983 claim with the added requirement of showing that the interference with the right was carried out with coercion, threats, or intimidation.

The City asserts that the MCRA claim against it must be dismissed because it is not a "person" within the meaning of the statute.  [ECF No. 25 at 9–10].  The City is correct that under Massachusetts law, a municipality is not a "person" within the meaning of the statute and is therefore not subject to liability under the MCRA.  See Howcroft v. City of Peabody, 747 N.E.2d 729, 744 (Mass. App. Ct. 2001) (holding that "a municipality is not a 'person' covered by the [MCRA]"); Kelley v. LaForce, 288 F.3d 1, 11 n.9 (1st Cir. 2002) (explaining that "a municipality cannot be sued under the MCRA," and citing Howcroft); Lucien-Calixte v. David, 405 F. Supp. 3d 171, 180 (D. Mass. 2019) ("[P]laintiff's MCRA claim fails because the Town is

a municipality and a municipality is not a 'person' covered by the MCRA."). Accordingly, the City's motion to dismiss Count 5 is GRANTED.

### F.   Intentional Torts Against the City: Counts 6 (False Arrest), 7 (False Imprisonment), 8 (Assault), and 9 (Intentional Infliction of Emotional Distress)

The City argues that Counts 6, 7, 8, and 9 must be dismissed because the Massachusetts Tort Claims Act ("MTCA") precludes public employers from being held liable for intentional torts. [ECF No. 25 at 11–12].

Under the MTCA, "[p]ublic employers shall be liable for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment . . . ." Mass. Gen. Laws ch. 258, § 2. Under § 10 of the MTCA, public employers are immune from liability for "any claim arising out of an intentional tort, including assault, battery, false imprisonment, false arrest, [and] intentional mental distress . . . ." Id. § 10(c). Thus, the City cannot be held liable for false arrest, false imprisonment, assault, or intentional infliction of emotional distress, and Plaintiff's claims against it fail as a matter of law. Accordingly, the City's motion to dismiss Counts 6, 7, 8, and 9 is GRANTED.

### G.   Count 10: Negligence

Plaintiff alleges that the City was "negligent in its training, supervision, auditing and disciplining" of City police officers. [Am. Compl. ¶ 44]. The City argues that the negligence claim must be dismissed because Plaintiff failed to comply with the MTCA's presentment requirement and failed to state a claim for negligence. [ECF No. 25 at 15–19].

13

1.     Presentment

Pursuant to the MTCA, a tort claim may not be brought against a public employer unless the plaintiff "first presented his claim in writing to the executive officer of such public employer within two years after the date upon which the cause of action arose, and such claim shall have been finally denied by such executive officer in writing." Mass. Gen. Laws ch. 258, § 4. If the executive officer fails to "deny such claim in writing within six months after the date upon which it is presented," the officer's inaction constitutes a "final denial of such claim." Id.

The City contends that Plaintiff's presentment letter, which was mailed to the City on May 23, 2018, [ECF No. 25-1], does not provide adequate notice of any negligence claims because it identifies only intentional torts, namely "damages arising out of false arrest, imprisonment, [and] emotional distress." [ECF No. 25 at 16 (quoting Plaintiff's presentment letter)].

"[The MTCA's] strict presentment requirement is a statutory prerequisite for recovery under the Act." Shapiro v. City of Worcester, 982 N.E.2d 516, 522 (Mass. 2013) (citing Vasys v. Metro. Dist. Comm'n, 438 N.E.2d 836, 840 (Mass. 1982)). "[C]lose scrutiny discloses that the 'strict compliance' precept is concerned more with whether presentment has been made to the proper executive officer (*proper party noticed*) in a timely fashion (*timeliness*) than with the content of the presentment (*adequacy of content*)." Martin v. Commonwealth, 760 N.E.2d 313, 316 (Mass. App. Ct. 2002) (alterations in original). "The purpose of the presentment requirement is to 'ensure[ ] that the responsible public official receives notice of the claim so that that official can investigate to determine whether or not a claim is valid, preclude payment of inflated or nonmeritorious claims, settle valid claims expeditiously, and take steps to ensure that similar claims will not be brought in the future.'" Rodriguez v. City of Somerville, 33 N.E.3d

1240, 1244 (Mass. 2015) (quoting Gilmore v. Commonwealth, 632 N.E.2d 838, 840 (Mass. 1994)). "A letter purporting to constitute presentment does not have to be absolutely precise. The letter does, however, have to identify[ ] the legal basis of a plaintiff's claim and must not [be] so obscure that educated public officials . . . find themselves baffled or misled with respect to [whether] a claim is being asserted which constitutes a proper subject for suit under G.L. c. 258." Id. (alterations in original) (internal citations and quotation marks omitted). "[T]he presentment requirement is not intended to demand such rigid particularization as to reincarnate sovereign immunity and bar legitimate claims for failing to invoke perfectly the correct 'Open Sesame.'" Martin, 760 N.E.2d at 316.

Plaintiff's letter satisfies the presentment requirement. The letter provides the basic facts that he has alleged in his amended complaint: he was stopped by two police officers on February 13, 2018, the stop was motivated by racial animus and violated his right to be free from an unreasonable search and seizure, and the officers were operating pursuant to an "open and notorious" "custom/practice" that was known to "supervisory officials of the [City] Police Department and of the municipality . . . ." [ECF No. 25-1 at 3]. Given Plaintiff's allegations that the police officers were acting unlawfully pursuant to a "custom" that was known to supervisory officials, it could reasonably be inferred that he was asserting a failure to train or failure to supervise claim and the allegations are not so inscrutable that they would "baffle[] or misle[ad]" an educated public official. Rodriguez, 33 N.E.3d at 1244.

    2.     Merits

Even if the presentment requirement is satisfied, the City argues that Plaintiff has failed to plead negligence because the amended complaint "does not state any specific conduct taken by the City that could be determined to be negligent." [ECF No. 25 at 19]. In light of the

Court's ruling that the Monell claims alleged in Counts 1 and 3 can proceed, the Court finds that the same reasoning applies to Plaintiff's negligent supervision, training, and investigation theory, and thus dismissal is not appropriate. Weiss v. Lavallee, No. 01-cv-40177, 2005 WL 8176485, at *22 (D. Mass. Oct. 7, 2005) (citing Parker v. Town of Swansea, 270 F. Supp. 2d. 92, 101–02 (D. Mass. 2003)) (noting that "the negligence required for recovery under the MTCA for alleged inadequate police training is similar, if not identical, to the deliberate indifference required under § 1983 in municipal liability claims").

Accordingly, the City's motion to dismiss Count 10 is DENIED.

IV. **MOTION TO STRIKE**

Plaintiff moves to strike footnotes 1–3 of the City's memorandum in support of its motion to dismiss because the statements are "impertinent, irrelevant to the material issues and border on an ad hominem aggression . . . ." [ECF No. 29 at 1]. Footnote 1 contains the non-controversial and common statement that "[f]or the limited purposes of the instant motion, the City accepts the nonconclusory facts as alleged in the Amended Complaint as true." [ECF No. 25 at 2 n.1]. There is nothing impertinent, irrelevant, or improper about this statement, which merely reflects a correct understanding of the law, and there is no basis to strike it. Accordingly, the motion to strike footnote 1 is DENIED. Footnote 2 states that "[w]hile not part of the record, Plaintiff was stopped because he entered an active crime scene that was cordoned off with police tape[,]" and footnote 3 notifies the Court that "Plaintiff has a history of filing similar lawsuits against law enforcement officials" and cites two lawsuits filed by Plaintiff in 1999 and 2003. [Id. at 2 n.2–3]. The Court did not consider either of these statements when reaching its decision on the motion to dismiss, and thus the motion to strike these footnotes is DENIED as moot.

## V. CONCLUSION

Accordingly, for the reasons set forth above, the City's motion to dismiss, [ECF No. 24], is GRANTED in part and DENIED in part. Counts 2, 4, 5, 6, 7, 8, and 9, are DISMISSED as to the City and the Officer Defendants in their official capacities. All other counts remain, including all counts asserted against the Officer Defendants in their individual capacities. Plaintiff's motion to strike, [ECF No. 29], is DENIED. Upon ascertaining the identity of the Officer Defendants, Plaintiff is ORDERED to promptly amend the complaint and effect service on the Officer Defendants.

**SO ORDERED.**

February 28, 2022                                             /s/ Allison D. Burroughs
                                                              ALLISON D. BURROUGHS
                                                              U.S. DISTRICT JUDGE