UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| WINSTON KENDALL, | ) |
| Plaintiff, | ) |
| v. | ) C.A. No. 1:21-CV-10711-ADB |
| JOHN DOE, RICHARD ROE, and THE CITY OF BOSTON, | ) |
| Defendants. | ) |

**THE CITY OF BOSTON'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

The City of Boston (the "City") submits this memorandum of law in support of its Motion for Summary Judgment on the two remaining counts asserted against it in the Plaintiff's Amended Complaint:[1]

(1) Count I, a violation of the "Fourth and Fourteenth Amendments to the Constitution of the United States, and Art. 14 of the Massachusetts Declaration of Rights, secured by §1983," and

(2) Count III, a "Monell" claim brought pursuant to 42 U.S.C. § 1983 premised on the allegations that the City has failed to properly "train, supervise, audit and discipline" its officers.

Discovery is now complete, and no facts or evidence have come to light that would support

---

[1] The Amended Complaint alleges claims against the "City of Boston BPD." The Boston Police Department is a department of the City of Boston, and is not a separate legal entity. Counts I and III are therefore more properly asserted against the City itself. See Stratton v. City of Bos., 731 F. Supp. 42, 46 (D. Mass. 1989).

1

the Plaintiff's allegations. There are no genuine issues of material fact relating to either count, and summary judgment in favor of the Defendant is appropriate.

## I.     PRELIMINARY STATEMENT

This case revolves entirely around the Plaintiff's choice to walk through a clearly marked, restricted crime scene during the active investigation of a motor vehicle accident that left three people hospitalized, including a pedestrian who was critically injured. The Plaintiff brought this suit alleging that the officers' stopping him – inside the restricted crime scene, where he was endangering the integrity of the evidence and the investigation – was an unconstitutional seizure under the Fourth Amendment.

The Plaintiff further alleges that the City of Boston was "deliberately indifferent to the need to properly train, supervise, audit and discipline BPD officers, relative to the constitutional rights of citizens" and that the City "violated the rights of citizens and the plaintiff, secured by § 1983."[2]

Regarding the alleged failure to train, *even if* the officers' act of stopping the Plaintiff was not a lawful seizure, he can present no evidence that the City of Boston's training regimen was in any way linked to his alleged constitutional violations – let alone that the training was the "moving force" behind such violations. To the contrary, documents produced in discovery show that officers were well trained in how to appropriately handle threshold inquiries, as well as stops based on reasonable suspicion and probable cause.

As to the alleged failure to "supervise, audit and discipline," the Plaintiff lists a number of allegations in his Amended Complaint that purport to support his claims. While those allegations

---

[2] Amended Complaint at ¶ 30.

2

are covered in more detail below, the most relevant allegations relate to his claims that the City:

> [M]aintained a custom, policy/practice, whereby a significant number of officers of the Boston Police Department…acting under colour *(sic)* of law, would racially harass, stop, detain, interrogate without reasonable suspicion, black persons, especially, black males. The said policy/practice was open and notorious, well-known to supervisory officials of the City of Boston, which officials have declined to carefully monitor, supervise, superintend and train law enforcement officers. The defendant COB has approved of, condoned, and ratified, the illegal and racist conduct of its officers.

Discovery has produced no evidence to support such a claim. The Plaintiff can present no evidence to substantiate his §1983 claims against the City of Boston. There are no genuine issues of material fact, and summary judgment in favor of the City is appropriate.

## II.   RELEVANT PROCEDURAL HISTORY

The Plaintiff filed an amended complaint on June 8, 2021, alleging nine separate claims against the City of Boston and fictitious defendants John Doe and Richard Roe – both individually and in their official capacities.[3] On February 28, 2022, this Court dismissed Counts 2, 4, 5, 6, 7, 8, and 9 "as to the City and the Officer Defendants in their official capacities."[4] The Court did not dismiss any counts against the defendant unnamed officers in their individual capacities, but ordered that "[u]pon ascertaining the identity of the Officer Defendants, Plaintiff is ORDERED to promptly amend the complaint and effect service on the Officer Defendants."[5]

On March 19, 2023, the Plaintiff moved to Amend his complaint to substitute fictitious defendant officers John Doe and Richard Roe for named individuals.[6] This Court denied that

---

[3] See Amended Complaint, ECF No. 16.
[4] See Memorandum and Order, ECF No. 32.
[5] Id.
[6] Motion for Leave to File Amended Complaint, ECF No. 82.

motion.[7] At present, Counts 1 and 3 remain as to the City of Boston and the defendant officers in their *official* capacities. All counts against the fictitious defendant officers John Doe and Richard Roe in their *individual* capacities remain.[8]

### III.   RELEVANT UNDISPUTED FACTS[9]

<u>Plaintiff's Interaction with BPD on February 13, 2018</u>

1) Just after 11:00 a.m., on Tuesday, February 13, 2018, there was a motor vehicle accident at the intersection of Columbus Avenue and Tremont Street in Roxbury, which resulted in serious injuries and hospitalization for both the driver, and the two pedestrians struck by the vehicle.[10]

2) Approximately twenty Boston Police officers, detectives, and crime scene investigators were dispatched to the intersection.[11]

3) Officers, detectives, and investigators soon cordoned off the intersection with yellow "BOSTON POLICE LINE DO NOT CROSS" tape, as well as several crime scene cones.[12]

4) Around 1:00 p.m. that afternoon, BPD Officer Joseph McDonough was posted inside the restitracted crime scene to "maintain the integrity" of and "prevent pedestrians coming in[to] the crime scene."[13]

---

[7] Memorandum and Order, ECF No. 91.

[8] Undersigned counsel appears only for the defendant officers in their *official* capacity, and understands that the City lacks standing to move on behalf of the officers *individually*. However, the City respectfully suggests that, as this Court has denied the Plaintiff's motion to amend his complaint, those counts against the defendant officers *individually* should be barred from proceeding to trial as a matter of law. See <u>Simmons v. D.C.</u>, 750 F. Supp. 2d 43, 45 (D.D.C. 2011) ("Plaintiff may bring an action against unknown John Doe defendants, but plaintiff must substitute named defendants for those unknown defendants after the completion of discovery.")

[9] The City sets forth its statement of facts solely for purposes of summary judgment and makes no admissions with respect to the facts contained herein. All facts contained herein are derived from the Defendant's Local Rule 56.1 Concise Statement of Material Facts as to Which There is no Genuine Issue to be Tried.

[10] Rule 56.1 Statement at ¶¶ 1-2.

[11] <u>Id</u>., at ¶¶ 1, 3.

[12] <u>Id</u>., at ¶¶ 3-4.

[13] <u>Id</u>., at ¶ 5.

5) Officer McDonough saw the Plaintiff in the middle of the outbound lane on Columbus Avenue, inside the crime scene, and immediately ordered the Plaintiff to return behind the crime scene tape.[14]

6) The Plaintiff responded "I'm not going back," and continued to cross Columbus Avenue towards Roxbury Community College.[15]

7) Officer John MacLaughlan stopped the Plaintiff at the intersection of Columbus Avenue and Tremont Street, where Officer McDonough requested the Plaintiff's identification because he had entered the crime scene.[16]

8) The Plaintiff initially refused to give officers any form of identification but eventually produced a Board of Bar Overseers card with his name on it.[17]

9) The Plaintiff told the officers "I do not believe in threshold inquiries."[18]

10) After the officers obtained the Plaintiff's name and other required information, they informed the Plaintiff that, given the current investigation, he would receive a criminal summons rather than be arrested.[19]

11) The Plaintiff then left the crime scene and the restricted area, and the officers continued their duties.[20]

BPD Officer Training

12) At the Boston Police Academy, as well as during continuing "in-service" training, BPD officers receive significant training in both the proper establishment of active crime scene

---

[14] Id., at ¶¶6-8.
[15] Id., at ¶ 9.
[16] Id., at ¶¶ 10-12.
[17] Id., at ¶¶ 13-15.
[18] Id., at ¶ 16.
[19] Id., at ¶ 17.
[20] Id., at ¶ 18.

investigations, and Fourth Amendment rights of citizens – which includes the law of warrantless seizures encompassing threshold inquiries, reasonable suspicion, and probable cause.[21]

13) This training also includes portions dedicated to the BPD internal policies, rules, regulations, and orders regarding bias-free policing and the prohibition on stops based solely on personal characteristics such as race, ethnicity, national origin, and gender.[22]

BPD Supervision and Discipline of Officers

14) Each Internal Affairs complaint against officers McDonough and MacLaughlin was properly investigated, and in each case where the investigation has been completed, the officers were either exonerated or the complaint was found to be unsubstantiated.[23]

### IV.   APPLICABLE LAW

#### a. Summary Judgment Standard

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The substantive law determines

---

[21] Id., at ¶ 19.
[22] Id., at ¶ 24.
[23] Id., at ¶ 25.

which facts are material.  See id. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Id. at 249. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (citations omitted).

"The non-moving party cannot oppose a properly supported summary judgment motion by resting on mere allegations or denials of the pleadings." Atain Specialty Ins. Co. v. Davester LLC, 518 F. Supp. 3d 551, 555 (D. Mass. 2021) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)).  "Rather, the non-moving party must go beyond the pleadings and by his or her own affidavits, or by 'the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id.  (citing Celotex Corp. v. Catrett, 477 U.S. 317 (1986)).

### b. The "Monell" Standard

"[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978).  In deciding Monell, the Supreme Court has set a very high bar for assessing municipal liability." Young v. City of Providence ex rel. Napolitano, 404 F.3d 4, 26 (1st Cir. 2005).

To prove municipal liability under § 1983, a plaintiff must show:

(1) an unconstitutional policy or custom of the City, **and**

7

(2) that this policy or custom was "the moving force" behind an actual violation of the plaintiff's constitutional rights.

See Board of County Commissioners v. Brown, 520 U.S. 397, 403 (1997), 520 U.S. at 403-05.

### c. Proving the Unconstitutionality of a Policy or Custom Requires a Showing of "Deliberate Indifference"

In order to prove that these alleged policies or customs are unconstitutional, the Plaintiff must show that said policies and customs "amount to deliberate indifference to the rights of persons with whom [its officers] come into contact." Connick v. Thompson, 563 U.S. 51, 61 (2011). Only where the City's alleged failure "reflects a 'deliberate' or 'conscious' choice by a municipality—a 'policy' as defined by our prior cases—can a city be liable for such a failure under § 1983." City of Canton v. Harris, 489 U.S. 378, 389 (1989).

A Plaintiff must show a constitutional violation on the part of the individual officers *and* that City officials behaved in a manner that "could be characterized as supervisory encouragement, condonation, or acquiescence, or gross negligence amounting to deliberate indifference." Lipsett v. Univ. of Puerto Rico, 864 F. 2d 811, 902 (1988). "[P]roof of mere negligence, without more, is inadequate." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 582 (1st Cir. 1994); see also Farmer v. Brennan, 511 U.S. 825, 835 (1994) (deliberate indifference "describes a state of mind more blameworthy than negligence" … and is often equated with "recklessness"). A less stringent standard of fault "would result in de facto respondeat superior liability on municipalities," which is not appropriate. Connick v. Thompson, 563 U.S. 51, 62 (2011).

Further, deliberate indifference requires notice—an official cannot make a deliberate choice "unless confronted with a problem that requires the taking of affirmative steps." Lipsett, 864 F. 2d at

8

902. It is only "when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, [that] the city may be deemed deliberately indifferent if the policymakers choose to retain that program." Connick, 563 U.S. at 61.

Where no evidence of deliberate indifference has been produced, the first prong of the Brown test cannot be met. In such situations, no genuine issues of material fact exist for the jury, and summary judgment in favor of the municipality is the appropriate remedy.

## V.  ARGUMENT

### (a) Count I – Fourth Amendment Seizure Claims

Count I of the Amended Complaint alleges that the City "violated plaintiff's rights arising under the fourth and fourteenth amendments to the constitution of the United States and Art. 14 of the Declaration of Rights, secured by S. 1983."[24]

As noted above, "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." Monell, 436 U.S. at 694. Given this, any claims against the City of Boston as a municipal entity – or against the unnamed officers in their official capacities – for alleged violations of the Plaintiff's Fourth Amendment rights must pursued via a Monell claim. Because the Plaintiff has alleged a separate Monell claim under Count III of the Amended Complaint, the applicable law and facts will be discussed in the City's response to Count III, below. To the extent that the Plaintiff seeks a separate and distinct claim against the City under Count I, the Plaintiff has failed to state a claim for which relief may be granted.

---

[24] Amended Complaint at ¶¶ 25-26.

9

### (b) Count III – 42 U.S.C. §1983 – "*Monell*" Claims

Count III of the Plaintiff's Complaint alleges two categories of constitutional violations against the City of Boston; (1) a failure to properly train officers, and (2) policies and customs of failing to supervise, audit, and discipline officers.[25]

### (1) A Monell Claim Requires Evidence of a Constitutional Violation

As a threshold matter, the law is clear that if a Plaintiff's constitutional rights have not been violated, then there is no Monell claim. Lachance v. Town of Charlton, 990 F.3d 14, 31 (1st Cir. 2021) ("Monell can impose municipal liability only for underlying, identifiable constitutional violations.")  Evidence produced in the discovery phase of this action shows that the Plaintiff was stopped by officers when he crossed clearly marked, high-visibility yellow taped printed with the words "BOSTON POLICE LINE DO NOT CROSS," entering the scene of a serious motor vehicle accident that was being actively investigated by almost 20 officers.[26]

The allegation that this was an unconstitutional seizure that fell short of a lawful "threshold inquiry" is not only misplaced, but is legally incorrect.  The Plaintiff was walking through a restricted crime scene, actively inhibiting and potentially endangering the then-ongoing investigation of a motor vehicle accident that left three people hospitalized and one pedestrian in critical condition.[27] At the point that Officers McDonough and MacLaughlin saw the Plaintiff walking inside a taped-off crime scene, they not only had sufficient grounds for a "threshold inquiry,"[28] but they also had reasonable suspicion for a stop,[29] *and* probable cause to arrest him for the common law offense of

---

[25] Amended Complaint at ¶¶ 29-30.
[26] Rule 56.1 Statement of Facts at ¶¶ 4, 7-9.
[27] Id. at ¶¶ 1-3.
[28] An officer has the right to "make a threshold inquiry where suspicious conduct gives the officer reason to suspect that a person has committed, is committing, or is about to commit a crime." Com. v. Watson, 430 Mass. 725, 729 (2000) (citing Commonwealth v. Silva, 366 Mass. 402, 405 (1974)).
[29] "Reasonable suspicion exists when an officer, based on specific, articulable facts and reasonable inferences therefrom, in light of the officer's experience, has reasonable grounds to suspect 'a person is committing, has

interfering with a police officer,[30] and the statutory offenses of disorderly conduct,[31] felonious tampering with evidence,[32] or even jaywalking,[33] had they so chosen.

The Officers' conduct was reasonable under the Fourth Amendment and did not constitute an unlawful seizure. There was no "underlying, identifiable constitutional violation," and there can be no municipal liability under Monell. Judgment as a matter of law in favor of the Defendant is appropriate.

### (2) § 1983 Municipal Liability Premised On Failure To Train

The Plaintiff alleges that the City has a custom and policy of failing to properly train its officers that rises to the level of a §1983 violation. "The liability criteria for 'failure to train' claims are exceptionally stringent...." Hayden v. Grayson, 134 F.3d 449, 456 (1st Cir.1998). A showing of "deliberate indifference" typically requires showing "a pattern of **similar** constitutional violations," or circumstances in which the "need for more or different training is so obvious and the inadequacy is so likely to result in the violation of constitutional rights." Hill v. Walsh, 884 F.3d 16, 24 (1st Cir. 2018) (emphasis added); *see also* Harris, 489 U.S. at 390; Connick, 563 U.S. at 64. "It is not enough to show that the [municipality's] training regimen was faulty; [a plaintiff] must also show that the [municipality] knew or had reason to believe that such a regimen had unconstitutional effects." Gray v. Cummings, 917 F.3d 1, 14 (1st Cir. 2019). As the U.S. Supreme Court has held, "[a] municipality's

---

committed, or is about to commit a crime.'" Commonwealth v. Resende, 94 Mass. App. Ct. 194, 197 (2018)

[30] The offense of interference with a police officer existed in Massachusetts common law, and thus remains in full force until altered or repealed by the Legislature. Commonwealth v. Adams, 482 Mass. 514 (2019)

[31] A person is guilty of the crime of disorderly conduct, in violation of G.L. c. 272, § 53, when he intentionally or recklessly creates a hazardous condition reasonably likely to affect the public. See Commonwealth v. Bosk, 556 N.E.2d 1055, 1057-1058 (1990) (motorist who stood in traffic lane, forcing vehicles to pass around him, while debating with police officer and refusing to return to his car was guilty of disorderly conduct). The Plaintiff's walking through an active crime scene investigation certainly meets this standard.

[32] See MGL c. 268 § 13E.

[33] See MGL c. 90 § 18A.

culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." Connick v. Thompson, 563 U.S. 51, 61 (2011).

This is generally done by offering evidence of "past violations sufficient to put the [city] on notice of such effects." Gray, 917 F.3d at 14. "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." Connick, 563 U.S. at 62. Relying on the facts of the case at hand alone is not sufficient to support a municipal liability claim. See Aaron v. City of Lowell, 2022 WL 2953033, at *2 (D. Mass. Jul. 26, 2022).

Discovery produced by the City indicates that the Boston Police Department trains its officers in a number of Constitutional Law issues related to their law enforcement duties.[34] That training includes the law of threshold inquiries, reasonable suspicion, and probable cause. It includes then-recent case law developments, as well as information on then-current rules, regulations, and orders regarding bias-free policing and the prohibition of stops based solely on personal characteristics, such as race, ethnicity, national origin, or gender.[35]

Even more damaging to the Plaintiff's case is the fact that the sole piece of evidence on which the Plaintiff bases his allegations of failure to train, supervise, or discipline officers is an inadmissible 2014 pamphlet.[36] The Plaintiff alleges that this pamphlet supports his contention that training was deficient, and that the City should be on notice of the alleged constitutional violations.[37] However, documents produced in discovery show that the very next year – in 2015 – the Boston Police Commissioner issued Special Order 15-108, introducing Boston Police Rule 113A: Bias-Free

---

[34] Rule 56.1 Statement at ¶¶ 19, 22-23.
[35] Id., at ¶ 22-24.
[36] Amended Complaint, ECF No. 16, at ¶17. See also Exhibit K, ACLU Report.
[37] Id.

Policing, intended to combat the existence, or perception, of racial bias. The rule was made a part of the standard Academy training materials the following year.

The Plaintiff can point to no evidence tending to show that this method of training is deficient. Furthermore, there is simply no evidence of deliberate indifference, and no evidence of any failure of the Boston Police Department to train its officers on how to appropriately interact with individuals unlawfully entering restricted crime scenes. There is no genuine issue of material fact, and summary judgment in favor of the City is appropriate on this count.

### (3) § 1983 Liability Premised on a Custom or Policy of Failure to Supervise, Audit or Discipline

The Plaintiff's second allegation is that the City has a custom and policy of failure to supervise, audit, and discipline its officers to such a gross degree that it rises to a § 1983 violation. This, too, necessarily fails to survive summary judgment.

Failure-to-supervise claims are subject to the same stringent standard as failure-to-train claims. See Rodriques v. Furtado, 950 F.2d 805, 813 (1st. Cir. 1991); Consolo v. George, 835 F. Supp. 49, 51 (D. Mass. 1993) ("Although the Supreme Court cases only discuss failure to train claims, this Court has held that the same standard is equally applicable to failure to supervise claims"). The existence of customs or policies relating to failure-to-supervise are, therefore, generally proven by a history or pattern of documented failures, sufficient to have put the municipality on notice.

Failure-to-discipline claims, too, are subject to a nearly identical standard requiring a history or pattern of failures. "In order to establish liability under a failure to discipline theory, the Plaintiff must show a persistent failure to discipline that demonstrates the existence of a custom or policy of Boston." Barker v. City of Bos., 795 F. Supp. 2d 117, 124–25 (D. Mass. 2011) (citing Burke v. Town of Walpole, No. 00–10376, 2003 WL 23327539, at *13 (D.Mass. Aug. 5, 2003). A single failure to

discipline is not sufficient to establish municipal liability under <u>Monell</u>. <u>Id.</u> *(*citing <u>Oklahoma v. Tuttle</u>, 471 U.S. 808, 823–24). Relying on the facts of the case at hand alone is not sufficient to support a municipal liability claim. <u>Id.</u> (citing <u>Aaron v. City of Lowell</u>, 2022 WL 2953033, at *2 (D. Mass. Jul. 26, 2022)).

The Plaintiff has alleged a number of purported "customs" of failure, that he claims makes the City liable.[38] As noted above, these allegations require evidence of deliberate indifference to survive summary judgment – most often proven through a history or pattern of bad acts. No such evidence has been presented, nor does it exist.

(i) <u>Alleged Lack of Investigation</u>

The Plaintiff also claims that the City has a "custom, policy and practice of failing to properly investigate citizen complaints of racial harassment and unlawful stops and detentions."[39] This is simply not true, as demonstrated by the lack of evidence uncovered in discovery. To the contrary, discovery in this action has shown that the Internal Affairs Division investigated every complaint against officers McDonough and MacLaughlin, and in every case, the officers were exonerated or the complaint was not sustained.[40]

As there is no evidence supporting these claims, there is no genuine issue of fact for a jury, and summary judgment in favor of the City is appropriate.

---

[38] Amended Complaint, ECF No. 16 at ¶¶ 5-6.
[39] Amended Complaint, ECF No. 16 at ¶¶15-16
[40] Rule 56.1 Statement at ¶ 26.

## VI. CONCLUSION

For the reasons set forth herein, the City of Boston respectfully requests that this Honorable Court grant its Motion for Summary Judgment, and enter judgment dismissing all counts of Plaintiffs' Complaint asserted against it – specifically Counts I and III, and grant such other and further relief as it deems just and proper.

Dated:  March 25, 2024                                          Respectfully submitted,

                                                                                    THE CITY OF BOSTON
                                                                                    By its attorneys:

                                                                                    ADAM CEDERBAUM
                                                                                    Corporation Counsel

                                                                                    /s/ Adam D. Johnson
                                                                                    Adam D. Johnson (BBO#679142)
                                                                                    Senior Assistant Corporation Counsel
                                                                                    City of Boston Law Department
                                                                                    City Hall, Room 615
                                                                                    Boston, MA  02201
                                                                                    (617) 635-4097 (ADJ)
                                                                                    adam.johnson@boston.gov


### Certificate of Service

I, Adam Johnson, certify that on March 25, 2024, a true and correct copy of this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and by first class mail to all non-registered participants.

                                                                /s/ Adam D. Johnson
                                                                Adam D. Johnson


### LR 7.1 Certification

I, Adam Johnson, hereby certify that I conferred with counsel for the Plaintiff via telephone conference on March 25, 2024 in an effort to resolve or narrow the issues raised herein. The parties were unable to resolve or narrow the issues.

                                                                /s/ Adam D. Johnson
                                                                Adam D. Johnson