UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WINSTON KENDALL,<br><br>    Plaintiff,<br><br>v.<br><br>JOHN DOE, RICHARD ROE, and the CITY OF BOSTON,<br><br>    Defendants. | *<br>*<br>*<br>*<br>*<br>*<br>*   Civil Action No. 21-cv-10711-ADB<br>*<br>*<br>*<br>*<br>*<br>* |

## MEMORANDUM & ORDER

BURROUGHS, D.J.

      Winston Kendall ("Plaintiff" or "Kendall") alleges that the City of Boston ("City") and two unidentified City police officers,[1] John Doe and Richard Roe ("Officer Defendants" and, together with the City, "Defendants") violated his civil rights when Boston Police Department

---

[1] At the time that this Court ruled on Defendants' motion to dismiss, discussed further infra, the Officer Defendants had not been served in their individual capacities, and the deadline to do so had long expired. [ECF No. 32 at 6]. Recognizing the potential need for discovery to identify the Officer Defendants, the Court ordered Plaintiff to "make diligent efforts to identify defendants Doe and Roe" during discovery and to "promptly amend the complaint and effect service, otherwise his claims against the Officer Defendants may be dismissed without prejudice." [Id. at 6–7]. Almost one year later, Plaintiff filed a motion to amend his Complaint to add Officers John MacLaughlan and Joseph McDonough to the case in their individual capacities. [ECF No. 82]. The Court denied this motion as untimely. [ECF No. 91]. Because the Officer Defendants have not been made parties to this case, any claims against them in their individual capacities are **DISMISSED**. Kemper Ins. Cos., Inc. v. Fed. Express Corp., 115 F. Supp. 2d 116, 125 (D. Mass. 2000), aff'd, 252 F.3d 509 (1st Cir. 2001) ("[T]he plaintiff has not identified the unnamed parties nor is there any prospect it will do so in this litigation; therefore its claims against them are hereby dismissed without prejudice."). The claims against the unnamed officers in their official capacities are claims against the City itself and will be addressed as such. See Suprenant v. Rivas, 424 F.3d 5, 19 (1st Cir. 2005) ("A suit against a public official in his official capacity is a suit against the governmental entity itself." (citing Wood v. Hancock Cty. Sheriff's Dep't, 354 F.3d 57, 58 n.1 (1st Cir. 2003))).

1

officers stopped him while he was walking through a crime scene, demanded his identification, and, once he had produced it, allowed him to continue on his way.

Presently before the Court are the parties' cross motions for summary judgment, [ECF Nos. 107, 112], as well as Plaintiff's motion to strike certain of Defendants' exhibits, [ECF No. 117]. For the reasons set forth below, Plaintiff's motion to strike and his motion for summary judgment are **DENIED**. Defendants' motion for summary judgment is **GRANTED**.

I. BACKGROUND

A. Motion to Strike

Plaintiff moves to strike eight exhibits that Defendants submitted in support of their motion for summary judgment. [ECF No. 117]. The relevant exhibits are: 1) an incident report written by Officer Stephen O'Connell dated February 13, 2018, [ECF No. 114-1 ("Exhibit A" or "Ex. A")]; 2) thirty-four crime scene photographs, [ECF No. 114-2 ("Exhibit B" or "Ex. B")]; 3) an incident report written by Officer McDonough dated February 13, 2018, [ECF No. 114-3 ("Exhibit C" or "Ex. C")]; 4) Plaintiff's answers to Defendants' first set of interrogatories, [ECF No. 114-4 ("Exhibit D" or "Ex. D")]; 5) portions of Boston Police Department training materials, [ECF Nos. 114-7, 114-8 ("Exhibits G1 and G2" or "Exs. G1 and G2")]; 6) a Boston Police Department "internal affairs officer resume" for Officer Joseph McDonough, [ECF No. 114-10 ("Exhibit I" "Ex. I")]; and 7) a Boston Police Department "internal affairs officer resume" for Officer John MacLaughlan,[2] [ECF No. 114-11 ("Exhibit J" or "Ex. J")]. Because the motion to

---

[2] The spelling of Officer MacLaughlan's surname varies throughout the parties' summary judgment briefing and the underlying factual record. Because "MacLaughlan" appears to be the most frequently used within the various police department reports, the Court uses that spelling in this order.

strike affects the factual record to be considered when ruling on the summary judgment motions, the Court addresses it first.

Plaintiff moves to strike these exhibits on the ground that they constitute "inadmissible hearsay and do not fall under well-recognized exceptions to the Rule against hearsay." [ECF No. 117 at 1]. As to Exhibits B and D, Plaintiff is incorrect that they are hearsay. Exhibit B consists of photographs, which, absent some underlying assertion within the photographs offered for the truth (which Plaintiff does not argue), are not hearsay. See Fed. R. Evid. 801(a) (defining "[s]tatement" for purposes of the hearsay rule as "a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion"). Exhibit D is Plaintiff's responses to Defendant's interrogatories, and those responses are considered non-hearsay when offered against Plaintiff. See id. 801(d)(2).

With regards to the remaining exhibits, although it is true that "hearsay evidence cannot be considered on summary judgment for the truth of the matter asserted," Evergreen Partnering Grp., Inc. v. Pactiv Corp., 832 F.3d 1, 12 (1st Cir. 2016) (internal quotation marks and citations omitted), "a district court may consider hearsay evidence submitted in an inadmissible form at the summary judgment stage where the content of the evidence proffered could later be provided in an admissible form at trial," SEC v. Ramírez, No. 15-cv-2365, 2018 WL 2021464, at *7 (D.P.R. Apr. 30, 2018). An objection as to the admissibility of evidence must "not [be] that the material 'has not' been submitted in admissible form, but that it 'cannot' be." Id. at *6 (internal citations omitted). Plaintiff offers no argument that the information contained in these exhibits could not be presented in an admissible form at trial, and Defendants have indicated (albeit vaguely) in responding to the motion to strike that they will seek admission of the exhibits through exceptions to the hearsay rule and, if necessary, present the relevant evidence through

3

"direct testimony," presumably through officers who drafted the incident reports, compiled the internal affairs summaries, and witnessed the events, as well as the officer who appeared as a 30(b)(6) witness on officer training. [ECF No. 124 at 2]; see also Yourga v. City of Northampton, 474 F. Supp. 3d 408, 416 (D. Mass. 2020) (challenged evidence at summary judgment may be treated as admissible if the evidence could come in by calling available witness to testify at trial). Without more to substantiate that this evidence could not be admitted in some form at trial, the Court declines to strike the exhibits, and Plaintiff's motion is **DENIED**.

### B. Material Facts[3]

At approximately 11:04 a.m. on Tuesday, February 13, 2018, officers from the Boston Police Department responded to a call about a motor vehicle accident with two injured pedestrians at the intersection of Columbus Avenue and Tremont Street in Roxbury. [ECF No. 116 ¶ 1; Ex. A at 1]. Among the officers to respond were Officers MacLaughlan and McDonough. [Ex. A at 1]. Both pedestrians and the driver of the car were transported by emergency medical services to an area hospital with injuries, with one pedestrian sustaining critical injuries. [ECF No. 116 ¶ 2]. Detectives and a crime-scene unit[4] arrived at the scene for

---

[3] The Court draws the facts, unless otherwise stated, from the parties' combined Rule 56.1 statements of material facts, which are Defendants' Response to Plaintiff's Statement of Undisputed Material Facts, [ECF No. 125], and Plaintiff's Opposition to Defendants' Statement of Undisputed Material Facts, [ECF No. 116], as well as documents referenced therein and, where necessary, other documents of record.

[4] Plaintiff takes issue with the phrase "crime scene," repeatedly disputing facts on the basis that Defendants' materials "do not establish the commission of any 'crime.'" [ECF No. 116 at ¶¶ 2–3]. Defendants' materials establish that 1) a vehicle accident occurred at the intersection of Columbus Avenue and Tremont Street in Roxbury, 2) a pedestrian died, and 3) detectives and "crime scene" units arrived at the scene and blocked access to it. [ECF No. 114-1]. These facts are sufficient to establish that police were investigating a potential crime and securing a "crime scene," and the Court need not and will not credit Plaintiff's conclusory allegations to the contrary. Cochran v. Quest Software, Inc., 328 F.3d 1, 6 (1st Cir. 2003).

processing. [Id. ¶ 3]. The intersection where the accident occurred was cordoned off with yellow that bore the words "BOSTON POLICE LINE DO NOT CROSS," as well as several crime-scene cones. [ECF No. 116 ¶ 4; Ex. C at 4].[5]

At about 1:05 p.m. on the same day, Officer McDonough was posted on Columbus Avenue between Tremont Street and Cedar Street, inside the secured crime scene, to maintain the integrity of the scene and to prevent pedestrians from entering. [ECF No. 116 ¶ 5; Ex. C at 4]. Thereafter, Kendall, a black male,[6] exited the Roxbury Crossing train station and began walking down Columbus Avenue toward the Roxbury District Court. [ECF No. 125 ¶ 1; ECF No. 116 ¶ 6; Ex. D at 1]. Officer McDonough first observed Kendall after Kendall had already entered the secured crime scene, and Officer McDonough immediately ordered Kendall back behind the tape due to the ongoing police investigation. [ECF No. 116 ¶¶ 7–8; Ex. C at 4]. Kendall, who avers that he did not hear Officer McDonough tell him not to cross the street, [ECF No. 116 ¶ 8; ECF

---

[5] Plaintiff disputes this material fact on the ground that the photographs cited in support have not been authenticated. [ECF No. 116 ¶ 4]. As discussed supra in ruling on Plaintiff's motion to strike, the question at summary judgment is not whether the evidence has "been submitted in admissible form, but [whether] it 'cannot' [possibly] be" admitted in any form at an eventual trial. Ramírez, 2018 WL 2021464 at *6 (internal citations omitted). At this stage, "[a] plain objection simply stating that the exhibit proffered has not been properly authenticated will not suffice." Rivera-Pina v. Luxury Hotels Int'l of P.R., No. 18-cv-1719, 2022 WL 993639, at *6 (D.P.R. Mar. 31, 2022), aff'd, 100 F.4th 325 (1st Cir. 2024) (quoting Gonzalez-Bermudez v. Abbott Lab'ys PR Inc., 214 F. Supp. 3d 130, 137 (D.P.R. 2016). Here, Plaintiff has not specified how the photographs are definitively inadmissible at trial, particularly in light of the fact that any number of officers present that day could testify at trial as to their authenticity. Latimore v. Trotman, No. 14-cv-13378, 2021 WL 5763009, at *5 (D. Mass. Dec. 3, 2021) ("The authentication requirement is not demanding and may be satisfied with 'competent testimony' indicating that the document is what it appears to be.").

[6] Specifically, Plaintiff identifies himself as a "Trin-African American" and as having been born in the Trinidad & Tobago. [ECF No. 125 ¶ 1]. He is a Trinidadian & Tobagonian citizen and a lawful permanent resident of the United States. [Id.]

No. 114-5 at 24:22–25:3; ECF No. 114 ¶ 9],[7] nonetheless then said something to the effect of, "I'm not going back," and continued to cross Columbus Avenue towards Roxbury Community College. [ECF No. 116 ¶ 9; Ex. C at 4]. Officer MacLaughlan then stopped Kendall at the intersection of Columbus Avenue and Tremont Street. [ECF No. 116 ¶ 11].

After Officer MacLaughlan stopped Kendall, Officer McDonough demanded Kendall's identification. [ECF No. 116 ¶ 12; Ex. C at 4].[8] Kendall responded that he was an attorney[9] and that he was late for a meeting at the Roxbury District Court. [ECF No. 116 ¶ 13; Ex. C at 4]. At some point during the interaction,[10] Kendall showed his bar card and other "identification

---

[7] In responding to Defendants' contention that Officer McDonough ordered Kendall back behind the tape, Plaintiff contends that he did not hear that order. [ECF No. 116 ¶ 8]. The fact that Plaintiff did not hear the order does not contradict that Officer McDonough gave the order, and the order is supported elsewhere in the factual record. [Ex. C at 4; ECF No. 125-1 at 120:3–6 ("[W]e were yelling to him to get out of the crime scene.")]. Construing the facts favorably to Plaintiff in ruling on Defendants' motion to dismiss, the Court will credit that Plaintiff did not hear the order; but that said, Plaintiff does not dispute that, after the order was given, he said something to the effect of "I am not going back." [ECF No. 116 ¶ 9].

[8] Plaintiff disputes Defendants' contention that Officer McDonough "requested" Plaintiff's identification, asserting that Officer McDonough instead "demanded" Plaintiff's papers. [ECF No. 116 ¶ 12]. Viewing the facts most favorable to Plaintiff when analyzing Defendants' motion for summary judgment, the Court accepts for present purposes that the officers demanded Plaintiff's identification.

[9] Plaintiff is a member of the Bar of Massachusetts (1974) and the First Circuit Bar (1991), and maintains a law practice in Massachusetts that is actively engaged in criminal and civil litigation in state and federal court. [ECF No. 125 ¶¶ 2–3].

[10] Defendants assert that they requested Plaintiff's identification twice because he refused the first time. [ECF No. 116 ¶¶ 12–15]. Plaintiff repeatedly asserts that he "produced identification papers at the officer's command," but his briefing is unclear as to which command, and he does not dispute that he initially refused to provide his identification. [Id. ¶¶ 12–14]. Although unclear if Plaintiff is disputing his alleged first refusal to produce identification, the Court does not view this potential "dispute" as material for the reasons articulated infra and accepts for present purposes that Plaintiff did, at some point during the interaction, produce his identification.

papers."[11] [ECF No. 116 ¶ 15]. Kendall also inquired several times if he was under arrest or free to leave, and he stated something to the effect of "I do not believe in threshold inquires." [ECF No. 116 ¶ 16].[12] After he provided identification and explained that he was a lawyer headed to court, Kendall was permitted to leave. [ECF No. 125 ¶ 7; ECF No. 116 ¶ 17–18; Ex. C at 4].

Following this interaction, Kendall sent Defendants a "Notice of Claim," which set forth his contention that the incident constituted an "unlawful, racially motivated harassment and detention." [ECF No. 125 ¶ 12].[13] Defendants have not responded to that Notice of Claim. [Id. ¶ 13].

### C. Procedural Background

On June 8, 2021, Plaintiff filed the operative amended complaint, [ECF No. 16 ("Amended Complaint" or "Am. Compl.")], in this action, alleging the following ten state and federal claims against the City and the unidentified Officer Defendants in their official and individual capacities: (1) violation of his Fourth and Fourteenth Amendment rights under 42

---

[11] Defendants contend and Plaintiff admits that he produced his "Board of Bar Overseers" card. [ECF No. 116 ¶ 15]. Plaintiff additionally claims that he produced "identification papers." [Id.; see also ECF No. 125 ¶ 7]. Viewing the facts favorably to Plaintiff on Defendants' motion for summary judgment, the Court credits that Plaintiff produced other unidentified "identification papers" along with his bar card.

[12] Plaintiff "does not recall the precise phrasing" but does not dispute that he said something to this effect. [ECF No. 116 ¶ 16].

[13] The parties appear to dispute when the Notice of Claim was received. Plaintiff contends that he provided the Notice of Claim to Defendants in 2018, [ECF No. 125 ¶ 139], and the Notice of Claim in the record is dated May 23, 2018, [ECF No. 115 at 5]. Defendants contend that "a complaint was received and a file was opened on March 16, 2022," [ECF No. 125 ¶ 140], and Defendants provide an Internal Affairs Division Summary Sheet for Officer MacLaughlan which lists the "received date" as March 16, 2022, [ECF No. 125-3 at 2]. Per the analysis infra, the Court does not view this dispute as material.

U.S.C. § 1983 and violation of Article 14 of the Massachusetts Declaration of Rights against Defendants (Count I), [Am. Compl. ¶¶ 25–26]; (2) violation of his right to equal protection under 42 U.S.C. § 1983 against Defendants (Count II), [id. ¶¶ 27–28]; (3) failure to train, supervise, audit, and discipline in violation of 42 U.S.C. § 1983 against the City (Count III), [id. ¶¶ 29–30]; (4) violation of 42 U.S.C. § 1981 against Defendants (Count IV), [id. ¶¶ 31–32]; (5) violation of Massachusetts General Laws ch. 12 § 11I against Defendants (Count V), [id. ¶¶ 33–34]; (6) false arrest against Defendants (Count VI), [id. ¶¶ 35–36]; (7) false imprisonment against Defendants (Count VII), [id. ¶¶ 37–38]; (8) assault against Defendants (Count VIII), [id. ¶¶ 39–40]; (9) intentional infliction of emotional distress against Defendants (Count IX), [id. ¶¶ 41–42]; and (10) negligence against the City (Count X), [id. ¶¶ 43–45].[14]

On June 22, 2021, the City filed a motion to dismiss the Amended Complaint, [ECF No. 24], and the Court dismissed Counts 2, 4, 5, 6, 7, 8, and 9 against the City and the Officer Defendants in their official capacities on February 28, 2022, [ECF No. 32 at 17]. The Court let stand Counts 1, 3, and 10. [Id.]

Plaintiff filed his motion for summary judgment on March 23, 2024, [ECF No. 107], which Defendants opposed on April 15, 2024, [ECF No. 119]. Defendants filed their motion for summary judgment on March 25, 2024, [ECF No. 112], which Plaintiff opposed on April 10, 2024, [ECF No. 118]. Plaintiff also filed a motion to strike certain exhibits attached to Defendants' motion for summary judgment, [ECF No. 117], which Defendants opposed, [ECF No. 124].

---

[14] Although the Amended Complaint appears to allege nine causes of action, two causes of action (assault and intentional infliction of emotional distress) are captioned "Count VIII." As such, in ruling on the motion to dismiss, the Court construed the assault claim as Count VIII, the intentional infliction of emotional distress claim as Count IX, and the negligence claim as Count X. [ECF No. 32 at 3–4]; see also Pt. III.B infra.

II.  **STANDARD OF REVIEW**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  An issue is considered "genuine" when "the evidence of record permits a rational factfinder to resolve it in favor of either party." Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 4–5 (1st Cir. 2010) (citing Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)).  A fact is considered "material" when "its existence or nonexistence has the potential to change the outcome of the suit." Id. at 5 (citing Martinez v. Colon, 54 F.3d 980, 984 (1st Cir. 1995)).

"To succeed in showing that there is no genuine dispute of material fact, the moving party must direct [the Court] to specific evidence in the record that would be admissible at trial." Ocasio-Hernandez v. Fortuno-Burset, 777 F.3d 1, 4 (1st Cir. 2015).  "That is, it must 'affirmatively produce evidence that negates an essential element of the non-moving party's claim,' or, using 'evidentiary materials already on file . . . demonstrate that the non-moving party will be unable to carry its burden of persuasion at trial.'" Id. at 4–5 (quoting Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000)).  Once the moving party has laid out its basis for summary judgment, the burden shifts to the party opposing summary judgment to demonstrate, "with respect to each issue on which she would bear the burden of proof at trial, . . . that a trier of fact could reasonably resolve that issue in her favor." Borges, 605 F.3d at 5.

On a motion for summary judgment, the Court reviews "the entire record in the light most hospitable to the party opposing summary judgment." Podiatrist Ass'n, Inc. v. La Cruz Azul De P.R., Inc., 332 F.3d 6, 13 (1st Cir. 2003) (quoting Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990)).  Where inferences are to be drawn from the stated facts, those inferences

9

"must be viewed in the light most favorable to the party opposing the motion." Oleskey ex rel. Boumediene v. U.S. Dept. of Def., 658 F. Supp. 2d 288, 294 (D. Mass. 2009) (quoting Founding Church of Scientology of Wash., D.C., Inc. v. Nat'l Sec. Agency, 610 F.2d 824, 836 (D.C. Cir. 1979)).  The Court, however, "safely may ignore conclusory allegations, improbable inferences, and unsupported speculation." Cochran, 328 F.3d at 6 (internal quotation and citation omitted).

When a court faces cross motions for summary judgment, it applies the above analysis, unaltered, "to each motion in turn." Wilkinson v. Chao, 292 F. Supp. 2d 288, 291 (D.N.H. 2003) (citing Wightman v. Springfield Terminal Ry. Co., 100 F.3d 228, 230 (1st Cir. 1996)); see also Cochran, 328 F.3d at 6 ("This framework is not altered by the presence of cross-motions for summary judgment.").

### III. DISCUSSION

#### A. § 1983 Claims (Counts I and III)

Plaintiff brings two § 1983 claims against Defendants, one predicated on violations of his Fourth and Fourteenth Amendment rights, [Am. Compl. ¶¶ 25–26 (Count I)], and the other on the City's failure "to properly train, supervise, audit and discipline" officers, [id. ¶¶ 29–30 (Count III)].  Defendants argue that because Count I is a claim "against the city of Boston as a municipal entity — or against the unnamed officers in their official capacities — [the] alleged violations of the Plaintiff's Fourth Amendment rights must [be] pursued via a Monell claim," which Plaintiff has separately alleged as Count III.  [ECF No. 113 at 9].  Because Defendants are correct, Counts I and III are taken together.

Although "a municipality cannot be held liable under § 1983 on a respondeat superior theory," § 1983 does impose "liability on a government that, under color of some official policy, 'causes' an employee to violate another's constitutional rights." Monell v. Dep't of Soc. Servs. of

10

City of N.Y., 436 U.S. 658, 691–92 (1978).  To establish a Monell claim, "a plaintiff must show that the violation occurred as a result of the municipality's 'policy or custom.'" Freeman v. Town of Hudson, 714 F.3d 29, 38 (1st Cir. 2013) (quoting Monell, 436 U.S. at 694).  That said, "[t]his theory of municipal liability is viable only where a plaintiff establishes the existence of underlying, identifiable constitutional violations." Bannon v. Godin, 99 F.4th 63, 88 (1st Cir. 2024) (cleaned up); see also Lachance v. Town of Charlton, 990 F.3d 14, 31 (1st Cir. 2021) ("Monell can impose municipal liability only for underlying, identifiable constitutional violations . . . .") (quoting Kennedy v. Town of Billerica, 617 F.3d 520, 531 (1st Cir. 2010)).[15]

Plaintiff argues that his Fourth Amendment right to be free from unreasonable seizure was violated because, when the officers approached him, he "declined a 'threshold inquiry,' did not consent to the detention, vigorously protested the custodial interrogation and advised the officer that he wished to proceed on his business," but he was not released until "after he had been subjected to a custodial interrogation."[16]  [ECF No. 109 at 14].  He further argues that "[a]t

---

[15] As relevant to the Monell claim, the parties focus large portions of their briefing on the Boston Police Department's training and supervision.  Plaintiff, in particular, offers dozens of pages of (largely conclusory) factual allegations regarding Boston Police Department's alleged "policy and practice" of "racially harass[ing], stop[ping], detain[ing], [and] interrogat[ing] without reasonable suspicion, black persons, especially, black males," which was "open and notorious, [and] well-known to supervisory officials of the City of Boston, [who] have declined to carefully monitor, supervise, superintend and train law enforcement officers."  [ECF No. 125 ¶ 2]; see also [id. ¶¶ 8–11, 131–153].  As discussed infra, because Plaintiff has failed to establish an underlying constitutional violation, the Court need not reach the issue of whether the City of Boston maintained a policy or custom of failing to supervise, audit, or discipline its officers.  That said, the Court notes that Plaintiff has provided almost no evidence that such a policy or custom exists (and, in fact, has provided almost no facts beyond those pertaining to his own stop) such that he would be entitled to summary judgment, even in the face of an underlying constitutional violation.  Bannon, 99 F.4th at 88 ("A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." (internal quotation omitted)).

[16] In his briefing, Plaintiff appears to abandon the argument that the officers violated his Fourteenth Amendment rights.  See generally [ECF No. 109].  Out of an abundance of caution,

11

the time of the stop of the plaintiff, there were no facts, known to the officers, that would have led a reasonable person to believe that the plaintiff had committed or was about to commit, any crime." [Id.] Defendants respond that "[t]he allegation that this was an unconstitutional seizure that fell short of a lawful 'threshold inquiry' is not only misplaced, but is legally incorrect," given that "[a]t the point that Officers McDonough and MacLaughl[a]n saw the Plaintiff walking inside a taped-off crime scene, they not only had sufficient grounds for a 'threshold inquiry,' but they also had reasonable suspicion for a stop." [ECF No. 113 at 10–11].

The Fourth Amendment to the Constitution protects citizens against unreasonable searches and seizures. U.S. Const. amend. IV. Law enforcement officers "may stop and briefly detain an individual for investigative purposes if [they] have a reasonable suspicion that criminal activity is afoot." United States v. Dapolito, 713 F.3d 141, 147 (1st Cir. 2013) (first citing United States v. Sokolow, 490 U.S. 1, 7 (1989); and then citing Terry v. Ohio, 392 U.S. 1, 30 (1968)).[17]

---

the Court notes that the facts at summary judgment do not establish that anyone similarly situated to Plaintiff was treated differently, as would ordinarily be necessary to establish a Fourteenth Amendment violation. Mulero-Carrillo v. Roman-Hernandez, 790 F.3d 99, 105–06 (1st Cir. 2015).

[17] Defendants do not argue that Plaintiff was free to leave during the interaction, nor do they dispute Plaintiff's contention that he was only "released" from their "custody" after he was "compelled" to produce identification. See [ECF No. 125 ¶ 7 (uncontested that "defendants released plaintiff from their custody, only after plaintiff was coerced into offering an explanation of his business and was compelled to produce 'identification' papers and hand them over to officers"). Defendants also appear to concede in their summary judgment briefing that the Court should analyze the stop under Terry. [ECF No. 113 at 10 (first citing Commonwealth v. Watson, 723 N.E.2d 501 (Mass. 2000); and then citing Commonwealth v. Resende, 113 N.E.3d 347 (Mass. App. Ct. 2018))]. Thus, while the Court would have appreciated briefing regarding whether the limited facts of this alleged "seizure" implicate Terry, for present purposes, the Court will analyze the stop pursuant to that framework. United States v. Dapolito, No. 2:12-cr-00045, 2012 WL 3612602, at *5 (D. Me. Aug. 21, 2012), aff'd, 713 F.3d 141 (1st Cir. 2013) ("'In the ordinary course a police officer is free to ask a person for identification without implicating the Fourth Amendment,' but a police officer 'cannot stop a citizen and demand identification "without any specific basis for believing he is involved in criminal activity."'" (first quoting

"An evaluation of the constitutionality of an investigatory stop involves two steps: (1) whether the initial stop was justified and (2) 'whether it was reasonably related in scope to the circumstances which justified the interference in the first place.'" United States v. Mohamed, 630 F.3d 1, 5 (1st Cir. 2010) (quoting Schubert v. City of Springfield, 589 F.3d 496, 501 (1st Cir. 2009)).  Overall, the "reasonableness inquiry deals with degrees of likelihood, not . . . certainties or near certainties, and ultimately we must make a practical, commonsense judgment based on the intricacies of each case." United States v. Tiru-Plaza, 766 F.3d 111, 116 (1st Cir. 2014) (internal quotation marks and citations omitted).

To establish reasonable suspicion, "the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." United States v. Arvizu, 534 U.S. 266, 274 (2002).  Officers "must be able to point to specific and articulable facts which, taken together," justify an investigatory stop. Terry, 392 U.S. at 21.  The Court considers the facts "available to the officer at the moment of the seizure," taking into account the totality of the circumstances. Id. at 22.

Plaintiff's investigatory stop was justified at its inception.  Although Plaintiff argues that the officers did not know any facts "that would have led a reasonable person to believe that the plaintiff had committed or was about to commit, any crime," [ECF No. 109 at 14], the record establishes that, at the moment he was stopped and asked for his identification, Plaintiff had entered a taped-off scene where police were still investigating a serious car accident that left three people hospitalized (one in critical condition), had been ordered by officers to leave the

---

Hiibel v. Sixth Jud. Dist. Ct. of Nev., 542 U.S. 177, 185 (2004); and then quoting United States v. Henderson, 463 F.3d 27, 45 (1st Cir. 2006))).

13

scene,[18] and, despite that order, was continuing to move through the restricted area.  [ECF No. 116 ¶¶ 8–9; Ex. C at 4].  At that time, under the totality of the circumstances, the officers had reasonable suspicion to believe that Plaintiff was or about to commit a crime such as interfering with ongoing police activity.  See, e.g., Rivera v. Foley, No. 14-cv-00196, 2015 WL 1296258, at *8 (D. Conn. Mar. 23, 2015) (holding "Plaintiff's operation of an unusual and likely unidentified device [a drone] into a cordoned-off area at the scene of a major motor vehicle accident and ongoing police investigation provides arguable reasonable suspicion that Plaintiff was interfering with police activity"); see also Commonwealth v. Adams, 125 N.E.3d 39, 50 (Mass. 2019) (interference with police officer remains common-law offense in Massachusetts).  The officers also were responsible for maintaining the scene and therefore had a more generalized but reasonable concern for the integrity of the crime scene.  Walker v. City of Orem, 451 F.3d 1139, 1149 (10th Cir. 2006) (recognizing that "detention or control of both suspects and non-suspects may be necessary to insure officer safety and to maintain the officers' control over a crime scene"); see also United States v. Wells, 719 F. App'x 587, 590 (9th Cir. 2017) (balancing reasonableness of seizure against defendant's interest "in securing and controlling the crime scene").

The stop was also reasonable in scope and fell well short of an arrest despite Plaintiff's contention that "[t]he seizure ripened into an arrest when the officers demanded 'identification.'" [ECF No. 109 at 14].  "There is no scientifically precise formula that enables courts to distinguish between investigatory stops . . . [and] 'de facto arrests.'"  United States v. Zapata, 18

---

[18] As noted above, Plaintiff contends that he did not hear this order.  [ECF No. 116 ¶ 8; ECF No. 114-5 at 24:22–25:3].  Whether or not Plaintiff heard the order, Officers McDonough and MacLaughlan, at the moment of the stop, thought they had given an order and that Plaintiff nonetheless continued to move through the scene, which, under the totality of the circumstances, could have contributed to their reasonable suspicion.

14

F.3d 971, 975 (1st Cir. 1994). Relevant factors include "the location and duration of the stop, the number of police officers present at the scene, the degree of physical restraint placed upon the suspect, and the information conveyed to the suspect." United States v. Rabbia, 699 F.3d 85, 91 (1st Cir. 2012). Here, the detention lasted, at most, only "a few minutes," and only as long as necessary for officers to examine Plaintiff's identification, which was a reasonable request given that the officers were trying to determine Plaintiff's business, if any, within the crime scene. [ECF No. 114-6 at 106:21–24; Ex. C at 4]; see also Rivera, 2015 WL 1296258 at *8 (stop reasonable where officer demanded identification after plaintiff flew drone over scene of major vehicle accident)

In sum, after Plaintiff (knowingly or not) entered a secured crime scene without permission, officers required him to produce identification before he could exit, and, once he produced some form of identification, the officers allowed him to leave. This conduct does not establish that the officers violated Plaintiff's Fourth Amendment rights. Because of this, their conduct cannot support a Monell claim, and Defendants' motion for summary judgment on Counts I and III is **GRANTED**. Plaintiff's motion is **DENIED**.

### B. Remaining Claims

In their summary judgment briefing, Defendants repeatedly contend that there are "two remaining counts" asserted against it, which are the § 1983 claims discussed supra. [ECF No. 113 at 1]; [ECF No. 119 at 1, 6 ("[T]here are no surviving negligence claims brought pursuant to the Massachusetts Tort Claims Act.")]. This is incorrect. In ruling on Defendants' motion to dismiss, the Court specifically noted that Count I of Plaintiff's Amended Complaint alleged a claim for violation of Article 14 of the Massachusetts Declaration of Rights, which the Court declined to address at that time because Defendants had not presented any ground for dismissal.

15

[ECF No. 32 at 7].  That claim remains.  Moreover, the Court denied Defendants' motion to dismiss Plaintiff's negligence claim pursuant to the Massachusetts Tort claims Act ("MTCA").  [Id. at 13–16].  This claim also remains.  Plaintiff has moved for summary judgment as to both.  [ECF No. 109 at 12–13].

Notwithstanding the fact that Defendants have not moved for summary judgment on these claims, the Court has "authority to enter judgment sua sponte at the summary judgment stage" so long as 1) "discovery is sufficiently advanced that the parties have enjoyed a reasonable opportunity to glean the material facts," and 2) the "targeted party [received] appropriate notice and a chance to present its evidence on the essential elements of the claim or defense."  Redondo Const. Corp. v. Izquierdo, 746 F.3d 21, 29 (1st Cir. 2014) (quoting Berkovitz v. Home Box Office, Inc., 89 F.3d 24, 29 (1st Cir. 1996)).  The parties here have engaged in extensive discovery, and Plaintiff's argument that he is entitled to summary judgment on both his Massachusetts Declaration of Rights claim and his negligence claim would indicate that he has been given appropriate notice and a chance to present evidence on these claims.  Consequently, the Court will consider whether summary judgment should be granted for either party (even though summary judgment for Defendants would be entered sua sponte).

### 1. Massachusetts Declaration of Rights, Article XIV (Count I)

Article 14 of the Massachusetts Declaration of Rights, among other things, provides "a right to be secure from all unreasonable . . . seizures."  Mass. Const. Pt. 1, Art. XIV.  The Massachusetts Supreme Judicial Court "has never held that there is a right of action to enforce the Declaration of Rights," although "[i]t did suggest, 35 years ago, in dicta, that such a right 'may' be available."  Pimentel v. City of Methuen, 323 F. Supp. 3d 255, 273 (D. Mass. 2018) (first citing Phillips v. Youth Dev. Program, Inc., 459 N.E.2d 453, 457 (Mass. 1983); and then

citing Layne v. Superintendent, Mass. Corr. Inst., Cedar Junction, 549 N.E.2d 166, 169 (Mass. 1989)).  That said, "no Massachusetts appellate court, in the time since, has ever held that such a right exists under Article 14."  Bird v. City of New Bedford, No. 17-cv-12159, 2019 WL 4394914, at *8 (D. Mass. Sept. 13, 2019).  Because "[i]t is up to the courts of Massachusetts, not this Court, to make that choice," id. (quoting Pimentel, 323 F. Supp. 3d at 273), and because no further discovery or argument from Plaintiff will change the state of the law, see Tucard, LLC v. Fid. Nat'l Prop. & Cas. Ins. Co., 567 F. Supp. 2d 215, 222 (D. Mass. 2008), the motion for summary judgment as to the claim for violations of the Massachusetts Declaration of Rights is **GRANTED** sua sponte.[19]  Plaintiff's motion for summary judgment as to this claim is **DENIED**.

### 2. Negligence (Count X)

Plaintiff's remaining claim is brought under the MTCA based on the City's alleged negligent supervision and training of the Officer Defendants.  [ECF No. 109 at 12–13]; [Am. Compl. ¶¶ 43–45].  "The [MTCA] creates a limited waiver of sovereign immunity such that municipalities may be held liable 'in the same manner and to the same extent as private individuals under like circumstances.'"  Correia v. Town of Framingham, 969 F. Supp. 2d 89, 100 (D. Mass. 2013) (quoting Sharon v. City of Newton, 769 N.E.2d 738, 748 (Mass. 2002)).  "Massachusetts courts, however, have allowed supervisory negligence claims against municipalities only when the 'municipality knew or should have known about an underlying, identifiable tort which was committed' by specific public employees."  Id. (quoting Kennedy v. Town of Billerica, 617 F.3d 520, 533 (1st Cir. 2010)); see also Dobos v. Driscoll, 537 N.E.2d 558, 569 (Mass. 1989) (municipalities may be sued under MTCA for supervisory negligence

---

[19] The statutory vehicle for bringing this claim is the MCRA, which Plaintiff did bring, and the Court dismissed for failure to state a claim at the motion to dismiss stage because the City is not a "person" within the meaning of the statute.  See [ECF No. 32 at 12–13].

"where the supervisory officials allegedly had, or should have had, knowledge of a public employee's assaultive behavior").

As discussed supra, Plaintiff has not provided any facts to support the commission of any specific tort claims traceable to City's alleged supervisory negligence.  The Officer Defendants did not violate Plaintiff's Fourth or Fourteenth Amendment rights, and the undisputed facts do not establish that any other tortious conduct occurred that could support a finding of supervisory liability.  "Thus, the court is left with allegations about 'generalized, free-standing and unspecified wrongs' as a basis for the claim," which "is insufficient."  Allen v. Town of E. Longmeadow, No. 17-cv-30041, 2018 WL 1152098, at *13 (D. Mass. Feb. 9, 2018), report & recommendation adopted, No. 17-cv-30041, 2018 WL 1141361 (D. Mass. Mar. 2, 2018).  As such, Plaintiff's motion for summary judgment is **DENIED** and Defendants' motion is **GRANTED**.

## IV.   CONCLUSION

Accordingly, Plaintiff's motion to strike, [ECF No. 117], and motion for summary judgment, [ECF No. 107], are **DENIED**.  Defendants' motion for summary judgment, [ECF No. 112], is **GRANTED** as to all counts.

   **SO ORDERED.**

December 19, 2024                                         /s/ Allison D. Burroughs
                                                          ALLISON D. BURROUGHS
                                                          U.S. DISTRICT JUDGE